IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| LaToyna Woodruff, ) | Case No. 6:14-cv-0064-TMC-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| MAU Workforce Solutions, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on a motion to dismiss filed by Defendant MAU Workforce Solutions ("MAU" or "Defendant"). [Doc. 5.] Plaintiff LaToyna Woodruff ("Plaintiff") filed her action against Defendant on November 22, 2013, in state court, alleging breach of contract, gender discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), retaliation under the Fair Labor Standards Act ("FLSA") and wrongful termination. [Doc. 1-1.] Defendants removed the action to this Court on January 8, 2014. [Doc. 1.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g), D.S.C., this magistrate judge is authorized to review all pretrial matters in this case and to submit findings and recommendations to the District Court.

## BACKGROUND

Plaintiff began to work at MAU in October 2010 as a production associate. [Doc. 1-1 ¶ 6.] When she began her employment with MAU, she was provided with a copy of the employee handbook, which in most instances entitles employees to receive "corrective action" and an opportunity to improve before an employee is terminated. [*Id.*

1

¶ 7.] On November 3, 2012, MAU assigned Plaintiff a 12-hour overnight shift at BMW, which was not part of Plaintiff's regular work schedule. [*Id.* ¶ 8.] Working this shift would entitle Plaintiff to "double time" pay, so Plaintiff accepted. [Id.] Plaintiff reported to BMW at 2:00 PM on November 3, 2013, and asked her supervisor, along with two male co-workers, when she should take her meal break. [*Id.* ¶ 9.] All three were advised by their regular supervisor that if they clocked out before 7:00 PM, they would not receive double pay. [*Id.*] However, at 5:00 PM, the night supervisor advised Plaintiff and her two male co-workers that they needed to take their meal break immediately because they would not have the opportunity to do so later. [*Id.* ¶ 10.] The three clocked out and drove to Burger King for dinner, and clocked back in at BMW twenty minutes later. [*Id.* ¶ 11.]

Two weeks later, Plaintiff received her paycheck and noted that she had been docked for an extra meal break, which she did not take, and that she was not paid the appropriate "double pay" for her November 3, 2013, shift. [*Id.* ¶ 12.] Plaintiff lodged a complaint with the MAU representative onsite at the BMW facility. [*Id.*] Plaintiff explained to MAU that she clocked out for her meal break on November 3, 2013, as advised by her supervisor. [*Id.* ¶ 13.] After this explanation, MAU advised Plaintiff that she was suspended. [*Id.* ¶ 14.] Less than two weeks later, MAU terminated Plaintiff, citing job abandonment. [*Id.*] Prior to her termination, Plaintiff received no warnings as to her performance or failure to adhere to MAU's policies and was never subject to any corrective action. [*Id.* ¶ 15.] Plaintiff's two male co-workers did not complain to MAU about the pay issues and have not been terminated or disciplined. [*Id.* ¶ 16.]

2

## APPLICABLE LAW

**Motion to Dismiss Standard**

*Rule 12(b)(6)*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support her claim and entitle her to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is

3

> entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts

4

that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

If on a motion pursuant to Rule 12(b)(6), matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.  Fed. R. Civ. P. 12(d).  Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment: the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

## DISCUSSION

**Breach of Contract**

Plaintiff alleges that MAU's handbook "constitutes a valid and binding contract regarding Plaintiff's employment at MAU and the terms thereof and, as such, altered the at-will status of Plaintiff'[s] employment at MAU."  [Doc. 1-1 ¶ 19.]  Plaintiff claims MAU breached the contract when MAU failed to follow the disciplinary policy contained in the handbook.  [*Id.* ¶ 20.]  MAU counters that MAU expressly disclaimed that the handbook constituted a contract.  [Doc. 5-1 at 5.]

"To recover for a breach of contract, the plaintiff must prove: (1) a binding contract entered into by the parties; (2) a breach or unjustifiable failure to perform the contract; and (3) damage suffered by the plaintiff as a direct and proximate result of the breach."  *Fung Lin Wah Enterprises Ltd. v. E. Bay Imp. Co.*, 465 F. Supp. 2d 536, 542

5

(D.S.C. 2006) (quoting *Tomlinson v. Mixon,* 367 S.C. 467, 479, 626 S.E.2d 43, 49 (Ct. App. 2006)).   Here, Plaintiff has alleged the existence of a valid contract—the handbook; the breach of such contract—MAU's failure to follow the handbook's disciplinary policy; and damages—Plaintiff's termination.   Defendant asserts that Plaintiff's claim fails because the handbook is not a valid contract.

South Carolina generally recognizes and upholds at-will employment, but an employer and employee may contractually alter those terms, including through an employee handbook.  *See Weaver v. John Lucas Tree Expert Co.*, Case No. 2:13-CV-1698-PMD, 2013 WL 5587854 (D.S.C. Oct. 10, 2013); *see also Small v. Springs Indus.*, 357 S.E.2d 452 (S.C. 1987).  The Parties agree that an employee's at-will status may be altered by the terms of an employee handbook [Doc. 5-1 at 5, Doc. 8 at 7], but Defendant argues such alteration is precluded by statute in this instance.   South Carolina Code Section 41-1-110 states:

> It is the public policy of this State that a handbook, personnel manual, policy, procedure, or other document issued by an employer or its agent after June 30, 2004, shall not create an express or implied contract of employment if it is conspicuously disclaimed. For purposes of this section, *a disclaimer in a handbook or personnel manual must be in underlined capital letters on the first page of the document and signed by the employee*. For all other documents referenced in this section, the disclaimer must be in underlined capital letters on the first page of the document. Whether or not a disclaimer is conspicuous is a question of law.

S.C. Code Ann. § 41-1-110 (2012) (emphasis added).  MAU asserts that the disclaimer on the first page of the handbook meets the statutory definition for a conspicuous disclaimer.  Plaintiff counters that the disclaimer is not underlined as required by statute.

Plaintiff did not attach the handbook to her Complaint, but she specifically referenced it.  [Doc. 1-1 ¶ 19.]  Defendants attached the handbook to their motion to

dismiss and Plaintiff does not dispute its authenticity. Therefore, the Court may consider it without converting the motion to one for summary judgment. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Having reviewed the handbook, the Court agrees with Plaintiff that the handbook does not meet the precise statutory definition of a conspicuous disclaimer because it is not underlined.[1] "However, an employee's at-will status may not be altered simply by demonstrating the absence of a conspicuous disclaimer and an employee signature in a handbook; the handbook must also include enforceable promises stated in mandatory language." *Anthony v. Atl. Grp., Inc.*, 909 F.Supp.2d 455, 467 (D.S.C. 2012). To be considered mandatory language, the handbook must be definitive in nature, promising specific treatment in specific situations." *Id.* (quoting *Hessenthaler v. Tri–Cnty. Sister Help, Inc.,* 365 S.C. 101, 110, 616 S.E.2d 694, 698 (2005)). Moreover, Plaintiff must point the Court to such language. *Id.* at 468. Finally, the handbook must restrict the right of the employer to discharge the employee. *Lawrence v. Westinghouse Savannah River Co., Inc.*, Case No. 1:03-CV-484-27, 2005 WL 3968031 (D.S.C. Mar. 31, 2005).

Here, Plaintiff has failed to point the Court to any such mandatory language that is definitive in nature and promises specific treatment. Further, an independent review by the Court reveals that the handbook's language on dismissal procedures is permissive and not mandatory. The handbook states under the employment separation section that "[a]ny associate whose conduct, actions or performance violates or conflicts with MAU's policies can be terminated immediately and without warning." [Doc. 5-2 at

---

[1] Because the Plaintiff has not pointed the Court to any specific, mandatory language giving rise to an enforceable contract, the Court need not decide whether the disclaimer was conspicuous under South Carolina law and simply assumes it was not for Plaintiff's benefit, as is appropriate under a motion to dismiss analysis.

31.]  The handbook then gives a non-exclusive list of examples of grounds for immediate dismissal.  [*Id.*]  The handbook specifically states that "the previous list is intended to be representative of the types of activities that may result in disciplinary action.  It is not exhaustive and it is not intended to be comprehensive and does not change the employment-at-will relationship between the associate and the Company." [*Id.*]  With regard for the discipline other than termination to which Plaintiff claims she was entitled, the handbook states that "[i]f an associate does not meet these standards [of compliance with company policy and procedures], the Company *may*, under appropriate circumstances, take corrective action, other than immediate dismissal."  [*Id.* at 32.]  This language is expressly permissive and does not limit the ability of MAU to terminate an employee.  As a result, and because Plaintiff has not pointed the Court to any mandatory language, this claim is appropriately dismissed because the handbook did not create a valid employment contract that was then breached.

**Retaliation under the FLSA**

In her Complaint, Plaintiff alleges that she "made a complaint to MAU regarding her pay in accordance with the [FLSA]" and "MAU terminated Plaintiff's employment just weeks after she made her complaint about pay to MAU."  [Doc. 1-1 ¶¶ 26-27.] Defendant argues that Plaintiff's "complaint was insufficient to place MAU on notice that she was exercising her rights under the FLSA, [so] her complaint did not constitute 'protected activity' and she has failed to state a claim for retaliation."  [Doc. 5-1 at 10.] Moreover, Defendants allege that failure to pay double time for the overnight shift and docking Plaintiff for a meal break are not violations of the FLSA.  [*Id.* at 9.]

8

"Section 215(a)(3) of the FLSA makes it unlawful for a covered employer to 'discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding.'" *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 431 (4th Cir. 2012). Intra-company, oral complaints are sufficient to constitute a 'filed' complaint and thus protected activity for which an employee may bring a retaliation claim. *See id.* However, the complaint must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* at 439 (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S.Ct. 1325, 1335 (2011)).

In her Complaint, Plaintiff alleges that there was a "discrepancy in her pay for November 3." [Doc. 1-1 ¶ 12.] She claims she was charged for an additional meal break and she was not paid double time for her shift,[2] and that she made a complaint regarding these issues to a MAU representative. [Id.] Plaintiff thus alleged that she made an intra-company, oral complaint about her pay to an MAU representative. Whether such complaint was sufficiently clear and detailed such that MAU understood it to be a claim under the FLSA is a factual question that should not be resolved at this stage of the proceedings. However, Plaintiff has alleged enough fact to state a claim for retaliation under the FLSA. The Court does not find compelling Defendant's argument that Plaintiff was not making a minimum wage claim because she termed the claim as being improperly docked for a break, but rather finds such argument to emphasize form over substance. Plaintiff sufficiently alleged that she was not paid the minimum wage

---

[2] As noted below, Plaintiff's double pay claim is not an FLSA violation.

9

because of the docked meal break and that she made a complaint about the discrepancy to MAU. Therefore, this claim should stand for purposes of the motion to dismiss.

**State Law Wrongful Termination Claim**

MAU does not dispute that Plaintiff has stated a claim for wrongful termination under South Carolina law, but contends that Plaintiff may not assert both an FLSA retaliation claim and a South Carolina wrongful termination claim under the precedent set forth in *Dockins v. Ingles Mkts., Inc.*, 413 S.E.2d 18 (S.C. 1992). Plaintiff counters that she has two separate claims: one for FLSA retaliation for the minimum wage claim due to the meal break and one for the state law wrongful termination because of the double wage agreement between MAU and its employees. The Court agrees with Plaintiff. As MAU has consistently argued, and as Plaintiff concedes, the FLSA does not protect her claim for double pay, as it was a private agreement between MAU and its employees. [*See* Doc. 5-1 at 9, Doc. 8 at 11.]

In *Dockins*, the South Carolina Supreme Court stated that "the dispositive issue in this appeal is whether an employee can maintain state action for wrongful discharge when he or she has been discharged in retaliation for filing a complaint under the [FLSA]." *Dockins*, 306 S.C. at 496. There, the plaintiff filed a complaint alleging violation of the FLSA because of excessive hours without compensation with the United States Department of Labor; his sole claim was that his discharge was in retaliation for making an FLSA violation allegation. *See id.* The South Carolina Supreme Court determined that "when a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy." *Id.* at 498.

10

Here, however, the FLSA does not provide a remedy for all of Plaintiff's claims. Plaintiff does not have a statutory, substantive right to double pay. The FLSA does not provide a remedy for infringement of that right. Therefore, the Plaintiff is not limited to the FLSA statutory remedy for that claim, because the FLSA provides no right and therefore no relief. *See Youngblood v. One World Techs., Inc.*, Case No. 8:07-CV-1301-HFF-BHH (Jan. 23, 2008) (finding that *Dockins* would not preclude Plaintiff from pursuing a certain claim because the FMLA "simply does not afford 'a remedy for infringement of that right' of which the plaintiff complains.'") The motion to dismiss should be denied as to this claim.

**Exhaustion of Administrative Remedies**

Plaintiff did not plead exhaustion of her administrative remedies for her Title VII claim in the Complaint. "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297 (4th Cir. 2009) (citing *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138–40 (4th Cir. 1995)). While not attached to her Complaint, Plaintiff has filed on the record her charge of discrimination and notice of right to sue letter, demonstrating that she has in fact exhausted her administrative remedies for this claim. [Docs. 8-2, 8-3.] Defendant raises no further objection to Plaintiff's claim of exhaustion and represents to the Court that it will accept an Amended Complaint pleading exhaustion. Therefore, if the District Court adopts this report, Plaintiff is to file an amended complaint pleading exhaustion of her Title VII claim within five business days of the Order.

## **CONCLUSION**

Wherefore, based upon the foregoing, the undersigned recommends that Defendant's motion to dismiss [Doc. 7] be GRANTED IN PART and DENIED IN PART. If the District Court adopts this Report, Plaintiff is to file an Amended Complaint pleading exhaustion within five business days of the District Court's Order.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 17, 2014
Greenville, South Carolina